**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| PUERTO RICO TOURISM COMPANY,<br><br>　　　Plaintiff,<br><br>v.<br><br>PRICELINE.COM, INCORPORATED, TRAVELWEB, LLC, TRIP NETWORK, INC., ORBITZ, LLC, INTERNETWORK PUBLISHING CORP. (d/b/a LODGING.COM), EXPEDIA, INC. (WA), HOTELS.COM, LP, HOTWIRE, INC., EGENCIA, LLC, TRAVELOCITY.COM LP, SITE59.COM LLC, DOES 1 THROUGH 1000, INCLUSIVE,DOES 1 THROUGH 1000, INCLUSIVE,<br><br>　　　Defendants | CIVIL ACTION FILE NO._____<br><br><u>**JURY TRIAL DEMANDED**</u> |

<u>**COMPLAINT**</u>

　　　Plaintiff, the PUERTO RICO TOURISM COMPANY, (hereinafter "Plaintiff" or the "the Company"), brings this action as authorized by 23 P.R. Laws Ann. sec. 671d(e) and 13 P.R. Laws Ann. sec. 2271w and alleges as and for its Complaint against the Defendants (as defined below), upon personal knowledge as to itself and its own acts, and as to all other matters upon information, belief and investigation:

## I.  INTRODUCTION

　　　1.  This Action is one of central importance to Puerto Rico and to the integrity of Puerto Rico's tax laws generally.

Complaint

This Action seeks to address a direct and intentional violation and evasion of 13 P.R. Laws Ann. sec. 2271o (b) and related rules and regulations regarding Puerto Rico's taxes on rooms (hereinafter "Puerto Rico's Room Tax Code" or the "Code"). Specifically, this action is brought by the Company against Defendants for their past and continuing failure to remit the full and proper amounts of taxes on overnight accommodations as required by the Code.

2.   The Company levies, charges and collects "a general tax of nine percent (9%) over the room occupancy rate" (hereinafter referred to as "Room Tax"). 13 P.R. Laws Ann. sec. 2271o (b).

3.   "Room occupancy rate" "[m]eans the rate collected or charged by a hotelier for the occupancy of any room of a lodging, valued in terms of money, whether received in cash or otherwise, including, without limitation, all the income in cash, manager's check or credit" and includes, "without limitation, the money received by the lodging on account of paid but unused rooms, room penalties and any other charge, rate or additional tax ("fees," "resort fees" and/or "taxes") that a hotelier charges for a stay in a lodging." 13 P.R. Laws Ann. sec. 2271 (8).

4.   "Lodging" "[m]eans every furnished building, commonly used and maintained open for the lodging of guests by means of

payment of a rental rate, which derives its revenues from the rental of rooms, and that within its offerings provides rental rates computed daily, weekly, fractionally or by a global rental on account of an all-inclusive concept" and includes "hotels, condohotels, all-inclusive hotels, motels, inns, short-term rentals, hostelries, guesthouses, apartment hotels and recreational facilities operated by the agencies or instrumentalities of the Commonwealth of Puerto Rico." 13 P.R. Laws Ann. sec. 2271 (22).

5. A "hotelier" is "any natural or juridicial person that operates a lodging in Puerto Rico including, without limitation, the owner, agent, proprietor, operator, lessee, mortgagor sublessee or the holder of the same" and includes "real estate brokers that collect the rent on account of a supplementary short-term lodging for the lodging of guests." 13 P.R. Laws Ann. sec. 2271 (21).

6. "[T]he hotelier becomes a collection agent for the Commonwealth of Puerto Rico[.]" 13 P.R. Laws Ann. sec. 2272 (b).

7. The Room Tax applies to out-of-state companies soliciting and doing business in Puerto Rico, just as it does to in-state companies. *See* 13 P.R. Laws Ann. sec. 2271p ("The tax levied in § 2271o of this title shall be paid by the guest at the time of paying the room occupancy rate to the hotelier.")

Complaint

8.    Defendants are online travel companies (hereinafter sometimes referred to collectively as "OTCs").  They contract so as to partner or associate with Puerto Rico hotels and/or national hotel chains with hotels in Puerto Rico to together/in combination with hotels arrange for the rental of rooms to others and/or acquire/buy hotel rooms and/or rights to hotel rooms for subsequent rentals to others.  Defendants conduct the business of acquiring and then renting hotel rooms through a two-step process: first, they acquire/buy hotel rooms and hotel room rights from hotels at low **wholesale** rates; second, Defendants rent the rooms arranged or acquired for rental to consumers (transient guests) at higher **retail** rates.  By the terms of Puerto Rico's Room Tax, Defendants are required to collect and remit a 9 percent tax for each **retail** rental of a hotel room to consumers (the transient guest) based upon the gross amount paid by the consumer.  Although Defendants charge consumers the Room and other hotel taxes based on the higher retail rate (or more), *Defendants do not remit the Room Tax directly to Puerto Rico and only a portion of the Room Tax is ever paid to Puerto Rico.*  In some instances, *Defendants do not remit any taxes at all*, not even a portion, as discussed further below.

9.    Defendants' acts of tax evasion give rise to the Company's claims herein for:  (1) declaratory judgment, (2)

injunctive relief, (3) violation of Puerto Rico's Room Tax Law, (4) tort action for negligence and fault under Article 1802 of the Puerto Rico Civil Code, (5) violation of Article 1042 of the Puerto Rico Civil Code, (6) unjust enrichment under Article 7 of the Puerto Rico Civil Code, (7) conversion, (8) assumpsit for money had and received, and (9) imposition of constructive trust.

## II. PARTIES

10.  The Company, as a public corporation, has the power to use and be sued pursuant to 23 P.R. Laws Ann. sec. 671d(e). Furthermore, the Company has the power to initiate this proceeding "to determine the debt or deficiency" of the OTCs on the account of the Room Tax "or of any surcharges, administrative fees and penalties, and which should be paid to the Company." 13 P.R. Laws Ann. sec. 2271w (a).

11.  As for the Defendants, they can be grouped into four distinct groups, as subsidiaries or indirect subsidiaries of either: A) Priceline; B) Orbitz; C) Expedia; or D) Travelocity.

### A.    The Priceline Defendants

12.  *Defendant priceline.com, Incorporated* ("Priceline") is a Delaware corporation with its principal place of business in Norwalk, Connecticut.  Lowestfare.com LLC (formerly known as Lowestfare.com Incorporated) ("Lowestfare") is a wholly-owned subsidiary of Defendant Priceline.

Complaint

13. *Defendant Travelweb, LLC* ("Travelweb") is a Delaware limited liability corporation with its principal place of business in Norwalk, Connecticut. Defendant Travelweb, LLC is a wholly-owned subsidiary of Lowestfare.

**B.    The Orbitz Defendants**

14. *Defendant Trip Network, Inc.* ("Trip Network") is a Delaware corporation with its principal place of business in Chicago, Illinois. Defendant Trip Network does business as Cheaptickets.com.

15. *Defendant Orbitz, LLC* is a Delaware limited liability company with its principal place of business in Chicago, Illinois. Orbitz, Inc. is the immediate parent company of Defendant Orbitz, LLC.

16. *Defendant Internetwork Publishing Corp.* ("Internetwork") is a Florida corporation with its principal place of business in Chicago, Illinois. Defendant Internetwork did business as Lodging.com.

17. From approximately 2004 through July 2007, when Travelport, Inc. was named Cendant Travel Distribution Services Group, Inc., it was the immediate parent company of Defendant Trip Network (d/b/a Cheaptickets.com) and Defendant Internetwork and the indirect parent company of Defendant Orbitz, LLC.

18. Defendant Orbitz, LLC, Defendant Trip Network, Defendant Internetwork and Orbitz, Inc. are subsidiaries of

Orbitz Worldwide, Inc.

### C.   The Expedia Defendants

19.   *Defendant Expedia, Inc. (WA)* ("Expedia (WA)") is a Washington corporation with its principal place of business in Bellevue, Washington.   Effective December 9, 2008, Hotels.com, Inc., a Delaware corporation, merged into Defendant Expedia (WA).   Effective January 1, 2009, TravelNow.com, Inc., a Delaware corporation, merged into Defendant Expedia (WA). Expedia (WA) is the only member of Hotels.com GP, LLC.   Expedia (WA) indirectly owns 100% of the partnership units of Defendant Hotels.com, LP and is the parent company of Defendant Hotwire, Inc.   Hotels.com, Gp, LLC and Defendant Hotwire, Inc. are wholly-owned subsidiaries of Defendant Expedia (WA).

20.   *Defendant Hotels.com, L.P.* is a Texas limited partnership with its principal place of business in Dallas, Texas.

21.   *Defendant Hotwire. Inc.* ("Hotwire") is a Delaware corporation with its principal place of business in San Francisco, California.

22.   *Defendant Egencia, LLC* ("Egencia") is a Nevada limited liability company with its principal place of business in Bellevue, Washington.

23.   Travelscape, LLC and Defendants Expedia, Inc. (WA), Hotels.com, LP, Hotwire, Inc., and Egencia, LLC are affiliated

business entities, related through the common corporate parent Expedia, Inc., a Delaware corporation ("Expedia (DE)").

**D.   The Travelocity Defendants**

24. *Defendant Travelocity.com LP* is a Delaware limited partnership with its principal place of business in Southlake, Texas.

25. *Defendant Site59.com LLC* ("Site59") is a Delaware limited liability company with its principal place of business in Southlake, Texas.

26. Travelocity.com LLC (formerly Travelocity.com, Inc.) is the general partner of Defendants Travelocity.com LP and Site59.com LLC.

27. Travelocity.com, LLC and Defendants Travelocity.com LP and Site59.com LLC are indirect subsidiaries of Sabre Holdings Corporation ("Sabre").

28. The true names and capacities, whether individual, corporate, associate or otherwise, of each of the Defendants designated herein as a DOE are unknown to the Company at this time and therefore said Defendants are sued by such fictitious names. The Company will ask leave of the Court to amend this Complaint to show their true names and capacities when the same have been ascertained. The Company is informed and believes, and alleges, that each of the Defendants designated herein as a DOE is legally responsible in some manner (including under the laws

of agency) and liable for the events and practices herein alleged and, as such, proximately caused damages to the Company as hereinafter further alleged.

### III.    JURISDICTION AND VENUE

29.  All Defendants regularly transact business within and profit by virtue of business within Puerto Rico and the claims asserted herein arise from their business conducted within and relating to Puerto Rico.  Defendants are thus subject to the jurisdiction of this Court.

30.  This Court possesses subject matter jurisdiction of the claims asserted herein pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

31.  Venue is proper in this pursuant to 28 U.S.C. § 1391.

### IV. SUBSTANTIVE ALLEGATIONS

### A.    General Allegations

32.  Defendants, each of them, are online sellers and/or online resellers and/or online renters of hotel rooms to the public.  Defendants sold and/or provided and/or rented hotel rooms to the public, but failed to pay Room Tax on their rental/sales of Puerto Rico rooms.

33.  Thus, the amount of Puerto Rico's Room Tax on hotel rooms sold/rented in Puerto Rico should be correctly calculated

as a percentage of the gross amount each consumer occupant (the transient guest) pays each Defendant for a hotel room.  That is the amount each Defendant is required to remit to the Company.

34.  Two parties cannot accomplish indirectly what one cannot accomplish directly under Puerto Rico's Tax Code. Specifically, when a hotel sells/rents a room itself, taxes are due on retail amounts without any deduction for marketing or services relating to that rental.  If a hotel contracts with another company to sell/rent rooms, the tax basis remains the same, i.e., the full amount paid by the customer/occupant. Marketing and service costs are not deductible, just as they are not in the case of direct rentals by a hotel.

35.  Defendants are generally charging and collecting retail tax charges that they call "tax recovery charges" (including Room Tax) from consumers that are not being remitted by Defendants to the Company.  The tax charges are being paid by the consumer occupants to Defendants and ostensibly collected on behalf of Puerto Rico.[1]  Defendants are also bundling the tax charges with alleged "fees" in order to disguise how much they actually remit in taxes.

---

[1] The Defendants often argue that they really only collect taxes on the wholesale amounts.  However, they fail to acknowledge the truth, which is that their "taxes and fees" lines are bundled charges designed to approximately equal or exceed taxes on the hotel rooms' retail amounts.  The algorithms Defendants use were specifically created to mimic the retail tax charges paid by other sellers of hotel rooms (including the hotels themselves), even though after collecting such charges, the Defendants only pay a smaller amount to the hotels for taxes.  The difference, or spread, creates illegal profit for the OTCs.

Complaint

36.  Defendants    contract    with    hotels    for    rooms    at negotiated discounted rates.  Defendants then mark up the prices of rooms and rent the rooms to transient guests, who actually occupy the rooms.  The retail tax charges (that Defendants often call "tax recovery charges") are paid by the guests based on the marked up rates.   However, the Company only receives tax revenues based on the lower, negotiated room rates.   The Defendants pocket the difference.

37.  For example, in a hotel room scenario, if a consumer pays Expedia.com $100.00 for a room in a hotel located in San Juan, Puerto Rico, Expedia.com calculates the tax charges based upon the amount the consumer pays – "gross amount" ($100.00). Expedia.com however, obtains that room at a lower "net" rate, for instance, $60.00.  Because Defendants act as retailers and/or agents, and/or combinations of individuals, the amount of Room Tax due is 9% of $100, or $9.00.  However, in most cases, the amount of Room Tax remitted to Puerto Rico by Defendants has been and is based on the lower "net" rate.  In this example, Puerto Rico would only receive $5.40 (9% of $60.00), an underpayment of the Room Tax liability by $3.60.  Thus, in this single example, Puerto Rico's collected Room Tax would be 40% less than the tax charges that the Defendants actually collect.

38.  All of the Defendants commonly utilize this practice when offering hotel rooms in Puerto Rico for sale.  The actual

Complaint

charges shown to the occupant are telling.  The online travel companies show the customers a line pertaining to taxes but fail to pay that amount of money to the Company.  For example, the Courtyard by Marriott San Juan Miramar located in San Juan, Puerto Rico selling rooms on its website presents charges as shown on the left, while Expedia.com presents its charges as shown on the right:

|  | A |  | B |  |
|---|---|---|---|---|
|  | **Marriott.com Booking** |  | **Expedia.com Booking** |  |
|  | **(Courtyard San Juan Miramar)** |  | **(same hotel)** |  |
| Room Rate: | $169.00 | Room Rate: | $169.00 |  |
| Estimated Taxes: | $ 30.42 | Taxes and Fees: | $ 30.42 |  |
| Estimated Total: | $199.42 | Trip Total: | $199.42 |  |

*See* Expedia.com Transaction attached as Exhibit A.  In this example, the Company receives $30.42 from the transaction in Column A and should receive the same amount from the Expedia.com transaction in Column B.

39. Instead, Expedia.com transmits some lesser amount for the room that is determined by its confidential contracts plus 9 percent of that lesser amount as so-called "tax recovery charge."

40. Neither the amount paid by Expedia.com for the room nor the amount paid for taxes is revealed to the customer.

41. The Defendants attempt to disguise their deceptive trade practice by improperly bundling their private profits

(disguised as a "fee") with taxes, such that the occupant cannot determine how much they paid in taxes. *See* Exhibits B ("Orbitz Transaction"), C ("Priceline Transaction"), and D ("Travelocity Transaction").

42.   Defendants have failed to remit the full Room Tax due and owing to the Company and their conduct continues.

43.   Defendants' business practices include charging the general public (transient guest) a combined taxes and service fee on the rental of each hotel room.

44.   The Company and the general public are led to believe Defendants are remitting the correct amount of Room Tax and other hotel taxes to the Company.

45.   Defendants are agents for the Company and the Commonwealth of Puerto Rico as hoteliers.   13 P.R. Laws Ann. sec. 2272 (b) ("[T]he hotelier becomes a collection agent for the Commonwealth of Puerto Rico").

46.   Defendants, however, are improperly calculating their tax liabilities based upon the amount Defendants paid the hotel for the room, not upon the gross amount the general public paid Defendants.

47.   As a result, the Room Tax liabilities paid by the general public and owed to the Company are underpaid/unpaid by

Complaint

the Defendants, who unlawfully pocket the difference.[2]

48.  These practices deprive Puerto Rico, the Company and its residents of the full amounts due and owing from the rental of each Puerto Rico hotel room.  In short, Defendants collect greater tax line item amounts from the general public than are remitted to the Company.

49.  In addition to failing to properly pay collected or owed Room Taxes, Defendants do not delineate to the general public the amount being paid for the Room Tax, other taxes, and the amount, if any, being paid separately as "service fees."

50.  Defendants require that the hotels not reveal to the general public what Defendants paid for the hotel room. Likewise, the hotels do not know what the general public paid Defendants for the hotel room.

51.  Instead, these amounts are bundled with other amounts to disguise what the customer is paying for each.

52.  The only way for the hotel to pay the correct Room Tax to the Company is if Defendants inform the hotel of the gross amount for which the hotel room was actually rented to the consumer by Defendants and to submit to the hotel the additional Room Tax owed to the Company (and which was actually paid by the

_____

[2] These unpaid/underpaid taxes that are due and owing under the Room Tax and related code sections, subsections and other tax provisions are hereinafter referred to as "Taxes Monies Due and Owing."

Complaint

consumer to Defendants).

53. Defendants never remit Room Tax directly to the Company, instead paying the tax *only on the cost of the overnight accommodation* to the overnight accommodation, assuming it will be forwarded on to the Company.

### B.   Defendants' Statements Regarding the "Merchant Model"

54. In recent years, the internet travel industry has seen explosive growth.  By some estimates, more than half of all hotel bookings in the United States are made online, many through internet travel companies owned by the Defendants.

55. Through their web portals, the Defendants allow consumers to rent hotel rooms in many different hotels throughout the country and the world.

56. The Defendants offer their services to hotels and consumers through two different business models: the "Agency Model" and the "Merchant Model."

57. Upon information and belief, the Merchant Model represents a majority of the Defendants' total online bookings.

58. The two models are described in the 2002 annual report of Defendant Expedia, Inc. as filed with the Securities and Exchange Commission on Form 10-K on March 31, 2003, and the 2004 Annual Report on Form 10-K as filed with the SEC of IAC/InterActive Corp. (the parent company - at that time - of Expedia.com, Hotwire.com and Hotels.com), p. 9.

Complaint

59. Under the Merchant Model, the Defendants do not function merely as service providers collecting a fixed transaction fee. Rather, the Merchant Model consists of two related transactions whereby an internet travel company, including each of Defendants: (i) first purchases and takes title to inventories of hotel rooms at negotiated rates from the hotels ("wholesale" rates); and (ii) then re-sells the rooms to consumers at higher rates ("retail" rates), keeping the difference, along with the service fees, as profit. The Defendants purchase rooms from hotels at the lower wholesale rate using their own credit cards. The selling hotels collect and remit to the Company hotel room taxes based on that lower wholesale rate.

60. The Defendants then rent hotel rooms to consumers at a higher retail rate; the consumers pay through a credit card transaction in which the particular Defendant is the merchant of record.

61. In their transactions with consumers, the Defendants charge retail tax amounts sufficient to cover the applicable hotel room taxes, but do not remit any such taxes to the taxing authority.

62. These merchant transactions were described in public filings by Expedia as follows:

Under the merchant model, **we receive inventory** (hotel

Complaint

rooms, airline seats, car rentals, destination services) from suppliers at negotiated rates. **<u>We determine the retail price paid by the customer and we then process the transactions as the merchant of record for the transaction. Acting as a merchant enables us to achieve a higher level of gross profit per transaction</u>** compared to the agency model and allows us to provide better prices to customers compared to agency transactions. Merchant transactions comprised 58% of our total revenues in 2002 and are derived from the difference between what we pay for the inventory and what we charge the customer.

Expedia (DE) Annual Report (Form 10-K) (Mar. 31, 2003) at F-3 (emphasis added).

63. Similarly, Priceline.com specifically admitted that it actually "purchases" and "takes title" to hotel rooms before reselling them to end users:

For most of these transactions, we establish the price we will accept, have total discretion in supplier selection, **<u>purchase and take title to the particular product and are the merchant of record</u>**. Consumers agree to hold their offers open for a specified period of time to enable us to fulfill their offers from inventory provided by participating sellers. Once fulfilled, offers generally cannot be canceled. (Emphasis added.)

Priceline.com, Annual Report (Form 10-K) (Mar. 15, 2003) at 29.

64. Hotels.com also identified itself as a "reseller" of hotel rooms obtained from the hotels:

We contract with hotels and other lodging properties in advance for volume purchases and guaranteed availability of rooms at wholesale prices **<u>and resell these rooms to consumers</u>** through our websites, third-party affiliated websites and our toll-free call centers.

Hotel Reservations Network, Inc. Annual Report (Form 10-K) (Apr. 2, 2001) at 3, 18 (emphasis supplied)

65.   Similarly,   Orbitz   admitted   that   it   "receive[s]
inventory directly from a hotel" that it "then mark[s]-up and
sell[s] to consumers:"

> Our   hotel   agreements   include   ...   merchant   hotel
> contracts with certain hotels, hotel management groups
> and hotel chains that give us access to discounted
> negotiated rates **that we then mark-up and sell to
> consumers on a prepaid basis**.
>
>                   * * *
>
> Our strategy calls for us to increase the number of
> hotel rooms we can offer under our Orbitz Merchant
> Hotel program based on merchant arrangements we make
> directly   with   individual   hotel   properties   and
> independent chains.   Under the Orbitz Merchant Hotel
> program, **we receive inventory directly from a hotel at
> a negotiated rate, and we determine the retail price
> at which we choose to offer it to the consumer**.
>
>                   * * *
>
> **We must also pay net rates to hotels in the event
> merchant hotel bookings sold on our website are
> purchased fraudulently**.

Orbitz, Inc. Annual Report (Form 10-K) (Mar. 18, 2004) at 11,
28, 74 (emphasis supplied).   This provision demonstrates that
Defendant Orbitz did assume the risk of loss in certain of these
**sale** transactions.

66.   Likewise, Travelocity.com, Inc. also distinguished its
purchase and re-sale transactions under the Merchant Model from
those where it merely provided a service:

> In order to increase its sales of higher margin
> products, Travelocity's business plan calls for it to
> increase **merchant model sales** pursuant to which

**Travelocity serves as the merchant of record in the transaction rather than as a sales agent.** In the merchant business, suppliers make inventory, such as airline seats, hotel rooms, car rentals, cruises, and vacation packages, available to Travelocity at wholesale or "net" rates. The merchant of record then sets the retail price that the customer pays and processes the transaction. **The merchant business generally delivers higher revenue per transaction than comparable sales under the agency model, in which Travelocity acts as an agent in the transaction, passing a customer's reservation to the travel supplier and receiving a commission from the supplier for its services.**

Travelocity.com, Inc., Annual Report (Form 10-K) (Mar. 26, 2002) at 7 (emphasis supplied).

67.   As Defendants have admitted in these sworn public filings, Defendants collect the hotel rental charges from consumers.

68.   Defendants all employ the Merchant Model.  By using this business model to acquire title and rights to large blocks of hotel rooms, Defendants are able to negotiate a lower, "wholesale" purchase or lease price from the hotels.

69.   Defendants then re-sell or re-lease the hotel rooms to consumers at a substantially higher "retail" rate.

70.   This purchase and re-sale "Merchant" business model is more profitable for the Defendants, and has become their dominant business paradigm in recent years.

71.   Due to the contractual or factual relationship between the Defendants and the hotels, the Defendants act to provide/sell customers Lodging, and are thus, in addition to

Complaint

being direct sellers, at a minimum agents of the hotels under the law.  The Defendants sell rooms and share, to some degree, in the profits or losses generated.  The Defendants operate as joint enterprise members with the hotels in this regard and, thus, the Defendants have joint enterprise membership liability. While the hotels are believed to pay full taxes upon the portions of the room occupancy rate which they retain, the Defendants fail to pay any taxes whatsoever on their retained portion of the room occupancy rate.

72.  Upon information and belief, there are occasions where Defendants unlawfully retain *all* monies charged to and collected from consumers as revenue without remitting *any* taxes to the Company.  Known in the industry as "breakage," the situation arises when a consumer books and prepays a Defendant for a hotel room, and all monies (including Room Tax) are collected, but the Defendant never remits *any* tax monies to the Company.

73.  For example, in a no-show scenario, where a consumer books and prepays a hotel directly for the room rental but neither shows up nor timely cancels, the hotel retains the room rate but still remits the applicable Room Tax to the Company.

74.  However, if a consumer books and prepays with an OTC Defendant, and neither shows up nor timely cancels, the OTC Defendant retains all monies paid by the consumer, including the Room Tax and other taxes charged to and collected from the

Complaint

consumer.  In both of these scenarios, the Company is entitled to the full amount of taxes collected from the consumer at the time the transaction occurs, as the Defendants have a duty to remit the taxes regardless of any invoicing irregularities that may occur in a no-show scenario.[3]

## C. Defendants Developed Intentionally Misleading Tax Practices

75.  Years ago, the Defendants recognized an opportunity. They decided that if they collected taxes at retail (which is what customers expect to pay), but paid taxes at wholesale, they could make lots of money on the "spread".  They could simply multiply the tax rate times the retail price when charging customers, but multiply the tax rate times the net cost when paying hotels.  They realized, though, that if they handled (or continued handling) things this way on their books, it would be illegal, and obviously so.  Therefore, the Defendants developed an "opaque" scheme to make it less obvious.

76.  Under this scheme, step one involved charging customers "tax money" that appeared to be in line with simply multiplying the tax rate times the retail price.  Step two involved remitting taxes on the wholesale rates and pocketing the difference.  However, to disguise things, the Defendants

---

[3] A Texas jury deemed the Defendants' practices illegal, including their "breakage" activities, and awarded more than $20 million in total to Texas local governments.  The April 4, 2013 Final Judgment awarded the City of San Antonio and similarly situated Texas cities $55,146,489 in total damages, penalties and interest.  "Breakage" damages are also being paid in Georgia, pursuant to a settlement there.

Complaint

developed algorithms and then made up "service fees" and surcharges to act as camouflage, to make up the difference.

77. These algorithms, service fees, and surcharges bore no relation to any services. Instead, these tools were really just roundabout ways to effectively charge taxes at retail without saying it.

78. The outcome was intended to be the same, as the earlier discussed example transactions showed.

79. As the sample transactions show, the Defendants' tax line closely resembles or approximates the tax line of the hotels. In fact, the Defendants take steps to ensure that the practice was revenue neutral and yielded them the same money from their "taxes and fee" charges just as if they were collecting taxes on the retail charges without a service fee.

80. The Defendants' own employees questioned the OTCs' tax practices and recognized the problem they had under the law: "**It's always a risk that as we educate the regulators or elected officials that they are better able to cook our goose.**"[4]

81. While the algorithms and resulting tax charges have been adjusted over time, the core features continue to share

---

[4] Orbitz Document cited in its Privilege Log Entry in the *City of Atlanta* Case and as cited in *Columbus, Georgia v. Orbitz, LLC*, Civil Action No. SU-06-CV-1895-05, slip. op. at p. 18 (Ga. Super. Ct., Jan. 30, 2007) (now vacated upon a joint request of the parties in conjunction with a payment of $450,000 by Orbitz to settle with the City of Columbus) (emphasis added).

Complaint

commonality on a number of key points: 1) there is a combined or bundled charge; 2) there is no disclosure about what amount of money is actually being paid in taxes; 3) the bundled tax charges resemble the amount of taxes at retail as charged by hoteliers and others so much so that it confuse(s) taxing authorities and consumers alike into believing that taxes are being collected **and paid** on the retail amounts when they are not; and 4) nobody can determine the amount of taxes actually being paid by the OTCs (unless they obtain the confidential internal OTC documents).

82. In sum, the Defendants create substantial "confusion and misunderstanding" by virtue of their presentation of hotel and tax charges to the customers, the use of formulas to reverse engineer retail tax charges, and the net effect of these practices, which results in underpayment to the Company.

83. As shown in the public statements made by Defendants and in the allegations above concerning their tax calculation, collection, and remittance practices, Defendants have been utilizing their merchant model practices for years, which have substantially affected commerce to the detriment of the Company, its residents, and its visitors and tourists. Consumers have been taken advantage of by the Defendants in being charged and paying for tax line charges that, according to the Defendants, are not owed. These actions by the Defendants constitute unfair

and deceptive acts and practices and are the type of practices prohibited by the Puerto Rico's Regulation of Business Practices for Consumer Protection.

## D. Defendants Refuse to Pay Assessments and Argue Threshold Legal Issues

84.   Taxing authorities around the country have repeatedly assessed and/or audited the Defendants.   The Defendants have always denied legal liability and asserted constitutional defenses, and often try to tie up the matters in the administrative process for years.

85.   For example, the Indiana Department of Revenue ("DOR") conducted an investigation and determined that Defendants should have collected and remitted Room Tax on the total amount the OTC collected from its customers for the years 2004-2006.   Despite issuing proposed assessments for Room Tax and interest, the Indiana DOR was not paid following its audit and assessment.   It was not until 2008 that a Letter of Findings was issued, many years after the initial audit and assessment was conducted.   *See* Indiana Department of State Revenue, Letter of Findings No. 08-0434 (2008), available at www.in.gov/dor/reference/legal/rulings/pdfs/0420080434revlof.pdf.

86.   The State of Indiana has not been paid any taxes directly by the Defendants.

Complaint

87.  Additionally, the South Carolina Department of Revenue ("SC DOR") conducted an audit of an OTC defendant's records for a period from 2001 through 2006.  After determining that the OTC was required to pay a tax on the gross proceeds received from furnishing hotel accommodations in South Carolina, the SC DOR issued an assessment and penalty.  The OTC contested the assessment and penalty and tied up the matter in administrative hearings.  Despite an order from the South Carolina Administrative Law Court ("ALC") that the OTC was required to pay the taxes, the OTC appealed.  It was not until 2011 that the South Carolina Supreme Court issued an opinion affirming the ALC's decision.  *See Travelscape, LLC v. S.C. Dep't of Rev.*, 391 S.C. 89, 705 S.E.2d 28 (SC 2011).

88.  Numerous Georgia local governments now represented in the *City of Rome* case previously sent multiple requests for information and assessments to the OTCs, but they were not paid and were forced to resort to litigation to collect the tax monies owed to the local governments.  *See City of Rome v. Hotels.com*, 2007 U.S. Dist. LEXIS 98522 (N.D. Ga. 2007).

89.  As demonstrated above, despite audits and assessments and attempts to resolve the matter administratively, Defendants employ a practice of stalling in order to evade the payments of taxes owed to governments.  Moreover, the threshold question, whether or not the online travel companies are subject to Puerto

Rico's Room Taxes, is one of law and does not require administrative expertise. It presents a question of law peculiarly within judicial competence, and judicial economy would be served where the legal issues involved would be resolved with less expense and more efficiently and expeditiously within the judicial system.

90. The OTCs will not remit Room Tax on their markups and service fees absent a court order.

## V. CAUSES OF ACTION

### COUNT I: DECLARATORY JUDGMENT

91. The Company incorporates each of the allegations in Sections I through IV above by reference as if fully rewritten herein.

92. Defendants have been and continue to deceptively and unlawfully collect tax charges at or above the retail rate while only paying taxes on wholesale rates. Defendants cannot hide an additional and illegal profit stream under the guise of "taxes and fees." The violations are simple and extremely harmful to Puerto Rico's Room Tax Code and those who travel to and stay in Puerto Rico. Tax dollars that should be flowing to the Company are being diverted into Defendants' out-of-state coffers.

93. All of the above outlined conduct is illegal and threatens the integrity of Puerto Rico's Room Tax Code. If this practice of collecting money as "taxes and fees" with no

separate itemization and generally only a partial remission, other businesses may decide to only pay Puerto Rico taxes at wholesale rates while charging customers (supposed) "taxes" at retail. If taken to the extreme, other businesses may decide to consider most of their charges to the public to be non-taxable services and only remit taxes on a small portion of their revenues.

94. Under this erroneous view, a Holiday Inn could decide to charge $100 dollars for the rental of a room, collect "taxes and fees" on the $100, but later remit Room Tax on the overnight accommodation of only a single dollar of that transaction and pocket the rest of the "taxes and fees" as a service fee. This is not the law.

95. The law requires transparent tax administration and full payment of the Room Tax on the gross amounts.

96. When Marriott rents a room on its online website, it charges and collects and remits Hotel Room Taxes based on the retail rate; however, when an OTC rents a Marriott room on its website, it charges and collects Room Taxes and other hotel taxes at or above the retail rate, but remits on a lesser wholesale rate. This is fundamentally wrong. The rule of law must be imposed and these Defendants must be brought in line with other renters of hotel rooms, so that Puerto Rico's revenues can be returned to the proper levels under the law.

Complaint

97.  The Company seeks a declaratory judgment against all Defendants finding Defendants' business practices as to the collection of the Room Tax illegal, deceptive, and unlawful and in violation of the laws and ordinances designated herein.

98.  Further, the Company seeks a declaratory judgment from the Court asking it to declare the rights and obligations of the Defendants with respect to the Company relating to their Room Tax obligations under the sections cited herein.  Specifically, the Company seeks a judgment declaring that Defendants are subject to the applicable provisions of Puerto Rico's Room Tax Code and further declaring that Defendants are legally required to collect such taxes on the gross amount paid by the transient guest who obtain rooms through Defendants and that Defendants are required to remit to Puerto Rico the tax charges collected by Defendants on the gross amounts paid by transient guests.

99.  A justifiable controversy is stated herein concerning the Defendants' Room Tax liability.

100. Such a declaratory judgment is proper.  *See* 32 P.R. Laws Ann. Ap. V R. 59.1 ("The Court of First Instance shall have the authority to declare rights, status and other legal relationship, even though another remedy is or may be instigated"); *see also*, 32 P.R. Laws Ann. Ap. V R. 59.2 (c) ("The enumeration made in subsections (a) and (b) of this rule shall neither limit nor restrict the exercise of general powers

Complaint

conferred by Rule 59.1 in any proceeding for a declaratory remedy, provided a judgment or decree will put an end to the controversy or clear any uncertainty").

## COUNT II:  INJUNCTIVE RELIEF

101. The Company incorporates each of the allegations in Sections I through IV above by reference as if fully rewritten herein.

102. Defendants continue and will continue their business practices pertaining to the underpayment of and failure to pay (in the case of "breakage") Room Tax on hotel rooms. Defendants' representatives, in sworn testimony given in other cases pertaining to similar issues, have stated that Defendants have not paid and will not pay taxes, such as Puerto Rico's Room Tax, prior to being ordered to do so by a Court.

103. Based upon this and other sworn testimony, there is a substantial likelihood that Puerto Rico will prevail upon the merits of this case when tried.

104. Further, the Company has incurred and will continue to incur irreparable harm from the Defendants' failure and refusal to pay the full amount of taxes due to the Company. Notwithstanding the possibility of ascertaining the amount of tax charges collected by Defendants and not remitted to the Company, the Company is unable to measure the harm caused to it

Complaint

and its citizens from the diversion of these funds away from their intended purpose(s).  Until appropriate relief is granted, the Company will continue to lose the benefits provided by these taxes and these lost opportunities cannot be remedied solely by monetary damages.

105. The balance of harms is entirely in favor of the Company.  The ultimate taxpayers are the hotel guests, and the Defendants are acting as their agents and as tax collection agents when they charge and collect tax dollars from those guests.  All retail tax charges should be remitted.  Because that is not occurring, the Company is deprived of needed and vital revenue resources which would benefit its citizens, whereas Defendants are collecting, but refusing to pay over moneys collected from the ultimate taxpayers.

106. The utilization of taxes for the support of tourism and related economic development is well recognized as social policy.

107. Therefore, the Company respectfully asks that the Court enjoin Defendants from further, future violation of the applicable Room Tax laws and that Defendants be ordered to: (1) collect said taxes on the gross amount paid to them by the consumer (transient guest) to whom they rent rooms; (2) identify, categorize/itemize and quantify to the Company the Room Tax due and being paid; (3) and remit the proper and full

Complaint

amount (including in "breakage" situations).

### COUNT III:  VIOLATIONS OF THE COMPANY'S ROOM TAX LAWS

108. The Company incorporates each of the allegations in Sections I through IV above by reference as if fully rewritten herein.

109. As set forth above, Puerto Rico's Room Tax is "a general tax of nine percent (9%) over the room occupancy rate." 13 P.R. Laws Ann. sec. 2271o (b).

110. "With the exception of [13 P.R. Laws Ann. sec. 2271a], no hotelier may levy or charge its guests charges denominated as a 'contribution', 'right', 'tax', or 'rate' that would otherwise indicate or lead to the belief that such charge is established by the Commonwealth of Puerto Rico when the charge has not been levied nor will be charged by the Commonwealth of Puerto Rico." P.R. Laws Ann. sec. 2271o (h).  "The hotelier shall be responsible for breaking down such charges in paragraphs in the bills, separate and independent from the charge with respect to the tax."  *Id.*

111. As shown in their public statements and as alleged herein, the Defendants are engaged in the business of selling/renting hotel rooms in Puerto Rico.  They contract with hotels to sell, and they do subsequently sell, Puerto Rico hotel rooms.  Accordingly, the amount of the Room Tax on hotel rooms sold/rented in Puerto Rico by Defendants should be correctly

calculated as a percentage of the *gross amount* each consumer pays to Defendants for a hotel room. And that is the amount each Defendant is required to collect and remit to the Company.

112. Upon information and belief, Defendants are charging to and collecting Room Tax from consumers that are not being remitted to the Company. The tax charges are being paid by the consumer to Defendants and ostensibly collected on behalf of Puerto Rico, but the Defendants are remitting only part of the money due as Room Tax. Further, they are not adding the Room Tax separately to the sales price but are deceptively hiding illegal profit streams under labels such as "taxes" or "taxes or fees" or "tax recovery charges."

113. The Company seeks the restoration of transparency as addressed above, and the payment of all Room Tax monies that should have been paid to date based upon the retail rates Defendants charged consumers for the rental of hotel rooms in Puerto Rico, along with all applicable penalties, interest and attorney fees.

## COUNT IV: TORT ACTION FOR NEGLIGENCE AND FAULT UNDER ARTICLE 1802 OF THE PUERTO RICO CIVIL CODE

114. The Company incorporates each of the allegations in Sections I through IV above by reference as if fully rewritten herein.

115. The Company contends that Defendants' unlawful conduct

in violating Article 1042 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. sec. 2992 and in breaching an obligation imposed by law creates an obligation to pay the collected and charged Room Tax.

116. Additionally, Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. sec. 5141, imposes the obligation to "repair the damage" done by any person whose act or omission "causes damage" to another through "negligence" or "fault". Compensation for damages under this legal provision is also imposed on any person who negligently and wrongfully violates a law, such as the Puerto Rico Tax Revenue Code.

117. Through contracts with hotels and accommodations, Defendants have elected to collect the Room Tax.

118. Defendants have by their own acts or omissions caused damage to Plaintiff through fault and negligence and shall be obliged to repair the damage so done.

119. Defendants choose to collect the Room Tax online, rather than having the hotel or accommodations customer pay the tax directly to the hotel or accommodation.

120. By collecting the Room Tax online, Defendants gain the confidence of the Company and purport to act with the Company's interest in mind.

121. Moreover, by collecting the Room Tax online, Defendants acquire influence over the Company.

Complaint

122. Defendants' choice to collect the Room Tax online creates a fiduciary duty between Defendants and the Company because it results in the Defendants handling money that is not their own or for their own benefit, but instead is the money of the Company and for the benefit of the Company.

123. Defendants' choice to collect the Room Tax online also creates a fiduciary duty between Defendants and the customers from whom they collect the Room Tax, who are paying Defendants the Room Tax for the specific purpose that Defendants will pay them over to the Company.

124. Defendants, in their sole discretion, combine taxes and fees in one lump sum, preventing their customers from ever seeing the amount they pay in Room Tax or the amount of markup Defendants are charging them.

125. By underpaying and, in the case of "breakage", not paying at all Room Tax to the Company, Defendants have abused the Company's influence, betrayed the Company's confidence and breached their fiduciary duty to the Company.

126. Moreover, by combining taxes and fees in one line item rather than separately stating them, Defendants are failing to provide transparency and accountability for the money entrusted in them by customers to pay over to the Company and also the transparency and accountability required by the Company.

127. Discovery is necessary because Defendants have failed

Complaint

to provide transparency by combining together Room Tax and fee amounts.

128. Only Defendants know how much they have paid over to the hotels and other accommodations in Room Tax verses what amounts they have kept for themselves in each transaction.

129. The true amounts of the Defendants have pocketed in each transaction as well as the true amounts Defendants have paid over to hotels as Room Tax are crucial to the determination of any damage award against Defendants in this lawsuit and, as such, without them, there is no adequate remedy at law.

130. Further, because Defendants have sold, rented, booked and leased hotel rooms and other accommodations online to a multitude of customers traveling to Plaintiff over time, there exist mutual accounts which are of a complex nature.

131. Defendants' unlawful conduct resulted in the loss of funds which are directly remanded to the Company, causing it to suffer substantial economic losses, compensable as damages under Puerto Rico's general tort statute. Defendants intentionally, recklessly and/or negligently violated the provisions of the Puerto Rico Tax Code, specifically the ones related with the Room Tax, 13 P.R. Laws Ann. secs. 2271w and caused economic losses to the Company. Such conduct, as a direct and proximate cause, deprived the Company of more than a decade of tax revenue.

Complaint

132. Defendants respond jointly and severally to the Company for these violations, entitling plaintiff to an award of compensatory damages, costs, interests and attorneys' fees.

133. Plaintiff herein also requests that the trier of fact, in the exercise of sound discretion, to require Defendants to provide an accounting of the total amounts they have collected from each customer in transactions resulting in hotel room stays and accommodation stays in Puerto Rico from the beginning of the Room Tax forward, as well as the amount Defendants retained from each transaction and the amount Defendants remitted to the hotel or accommodation in each transaction for Room Tax and the cost the hotel or accommodation charged Defendants for the room in the hotel or accommodation.

134. Because the Tax Monies Due and Owing was not available for over a decade, for the Company's use to further promote and grow the number one industry on the Island, the Company has suffered millions of dollars in damages, and continues to suffer ongoing damages, which will be established consistent with the evidence.

## COUNT V: UNJUST ENRICHMENT UNDER ARTICLE 7 OF THE PUERTO RICO CIVIL CODE

135. The Company incorporates each of the allegations in Sections I through IV above by reference as if fully rewritten herein.

Complaint

136. Beginning in approximately 1999 and continuing, Defendants, by and through their officers, directors, employees, agents, or other representatives, charged and collected the Room Tax from hotel guests who booked online reservations in Puerto Rico, but failed to remand the same to the Company as required by the Puerto Rico Tax Code.

137. Defendants solely have benefitted from their illegal conduct, and consequently it would be inequitable that the Defendants be allowed to retain any of these payments and collections resulting from their illegal conduct. Pursuant to Article 7 of Puerto Rico Civil Code, 31 P.R. Laws Ann. sec. 7, the Company demands that Defendants disgorge all such monies acquired through Defendants' illegal or inequitable conduct.

138. Therefore, the Company requests an order that Defendants be directed to give possession of the Tax Monies Due and Owing to the Company.

### COUNT VI: CONVERSION

139. The Company incorporates each of the allegations in Sections I through IV above by reference as if fully rewritten herein.

140. At all times alleged herein, the Company had a property interest in the Tax Monies Due and Owing[5] in that it was

---

[5] "Tax Monies Due and Owing" herein refers to the underpaid and underpaid (as in the situation of "breakage") Room Tax claimed herein.

Complaint

and is the sole rightful owner.

141. Indeed, "the hotelier becomes a collection agent for the Commonwealth of Puerto Rico[.]" 13 P.R. Laws Ann. sec. 2272 (b).

142. In collecting taxes on the retail rate but only remitting taxes on the wholesale rate or not at all in the case of "breakage", Defendants intentionally exercised dominion and control over the Tax Monies Due and Owing which so seriously interfered with the right of the Company to control such Monies that Defendants may justly be required to pay the Company such Monies.

143. Therefore, the Company requests an order that Defendants be directed to give possession of the Tax Monies Due and Owing to the Company.

### COUNT VII: ASSUMPSIT FOR MONEY HAD AND RECEIVED

144. The Company incorporates each of the allegations in Sections I through IV above by reference as if fully rewritten herein.

145. By selling and renting rooms in Puerto Rico, Defendants were obligated by law and, therefore, promised to collect the Room Tax and remit such taxes on the retail amount to the Company, including but not limited to in "breakage" situations. Defendants have breached that promise and damaged Plaintiff in the amount of the Tax Monies Due and Owing by

collecting the Room Tax charges but unlawfully failing to remit the tax charges on the retail amount to the Company.

146. As such, under the principles of equity, Defendants must be disgorged of said collected but un-remitted taxes which in equity and good conscience belong to the Company and its citizens. Therefore, the Company requests an order that Defendants be directed to give possession of the Tax Monies Due and Owing to the Company.

## COUNT VIII: IMPOSITION OF A CONSTRUCTIVE TRUST

147. The Company incorporates each of the allegations in Sections I through IV above by reference as if fully rewritten herein.

148. Defendants and the Company had a confidential relationship in that the Company justifiably believed that the Defendants would act in its best interest. Specifically, Defendants owed a duty imposed by law and also a fiduciary duty to the Company to collect the Tax Monies Due and Owing to the Company. In connection with that duty, Defendants received money belonging to the Company that they would be unjustly enriched in retaining even if it they had obtained it honestly, which they did not.

149. By virtue of Defendants' actions, Defendants hold the Tax Monies Due and Owing as constructive trustee for the benefit of the Company. The Company requests an order that Defendants

Complaint

## COUNT IX: DAMAGES

150. The Company incorporates each of the above allegations by reference as if fully rewritten herein.

151. The Company requests that the Court order Defendants to provide restitution to it and to disgorge the Tax Monies Due and Owing to the Company.

152. Under Puerto Rico law, the Company is entitled to interest and penalties on the unpaid and underpaid Room Tax.

153. The Company requests that it recover all penalties, interest, costs and reasonable and necessary attorneys' fees it is entitled to under the law and in equity.

154. The Company requests both prejudgment and post-judgment interest at the maximum rate allowed by law.

155. The Company requests damages pursuant Article 1802 of the Puerto Rico Civil Code.

## DEMAND FOR JURY TRIAL

156. The Company demands that this action be tried by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure of any issue triable by right by a jury.

## PRAYER FOR RELIEF

**WHEREFORE,** the Company prays for the following judgment in its favor against Defendants in accordance with all code sections and rules of the Company:

Complaint

A.   For judgment against Defendants and in favor of the Company on all claims asserted in this Complaint;

B.   For a judgment declaring that Defendants are subject to the applicable provisions of Puerto Rico's Room Tax Code relative to the hotel room sales/rentals, and further declaring that Defendants are legally required to collect such taxes on the gross amounts paid by the transient guests who obtain rooms through Defendants and that Defendants are required to remit to the Company the taxes collected by Defendants on the gross amount paid by transient guests including, but not limited to, "breakage" amounts;

C.   For injunctive relief requiring Defendants' future compliance with the Company's tax laws;

D.   For a permanent injunction restraining Defendants from continuing their trade practices of charging and collecting retail tax charges but only remitting taxes on the wholesale price and restraining Defendants from continuing their method of hiding such practices by bundling such taxes with alleged fees (as well as from continuing to collect and retain "breakage" amounts);

E.   For payments of all Room Tax monies due to the Company including, but not limited to, "breakage";

F.   For disgorgement and restitution plus interest due thereon

Complaint

at the legal rate and/or as established by the Company;

G.   For an accounting;

H.   For payment of all monies being held by Defendants as constructive trustee for the Company;

I.   For pre- and post- judgment interest to the extent allowed by law;

J.   For penalties, fines and fees, including attorneys' fees, as allowed by law;

K.   For costs of this action;

L.   For damages pursuant to Article 1802 of the Puerto Rico Civil Code; and

M.   For such other and further relief as this Court may deem appropriate.

Respectfully submitted, this the 17th day of April, 2014.

/s/José A. Andréu Fuentes
USDC-PR 204409
Bufete Andréu & Sagardía
261 Ave. Domenech
San Juan, PR 00918-3518
Phone: (787) 754-1777
Facsimile: (787) 763-8045
jaf@andreu-sagardia.com


Crongeyer Law Firm, P.C.
2170 Defoor Hills Road, NW
Atlanta, GA 30318
Phone: (404) 542-6205
Facsimile: (404) 872-3745
jwc@birdlawgroup.com
(Application for Admission Pro Hac Vice to be submitted)

/s/Angel Rotger-Sabat
USDC NO.: 208601
ars@cmtplaw.com
/s/Ramón Coto-Ojeda
USDC NO.: 202006
rco@cmtplaw.com

COTO & ASSOCIATES
Attorneys for the Plaintiff
PUERTO RICO TOURISM COMPANY
MCS Plaza Suite 800
255 Ponce De León Ave.
Hato Rey, Puerto Rico 00917
PO Box 71449
San Juan, Puerto Rico 00936-8549
Tel: (787) 756-9640
Fax: (787) 756-9641

Complaint

**ROBERT K. FINNELL**
Georgia State Bar No. 261575
**THE FINNELL FIRM**
One West Fourth Avenue,
Suite 200
Post Office Box 63
Rome, Georgia 30162
Phone: (706) 235-7272
Facsimile: (706) 235-9461
bob@finnellfirm.com
(*Application for Admission Pro Hac Vice to be submitted*

**JOHN W. CRONGEYER**
Georgia Bar No. 196264
**WILLIAM Q. BIRD**
Georgia Bar No. 057900
**KRISTEN L. BEIGHTOL**
Georgia Bar No. 425814
**BIRD LAW GROUP, P.C.**
2170 Defoor Hills Road, NW
Atlanta, GA 30318
Phone: (404) 873-4696
Fax: (404) 872-3745
wqb@birdlawgroup.com
klb@birdlawgroup.com
(*Applications for Admission Pro Hac Vice to be submitted*)