IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| PUERTO RICO TOURISM COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>PRICELINE.COM, INCORPORATED, TRAVELWEB, LLC, TRIP NETWORK,INC., ORBITZ, LLC, INTERNETWORK PUBLISHING CORP. (d/b/a LODGING.COM), EXPEDIA, INC. (WA), HOTELS.COM, LP, HOTWIRE, INC., EGENCIA, LLC, TRAVELOCITY.COM LP,SITE59.COM LLC, DOES 1 THROUGH 1000, INCLUSIVE,<br><br>Defendants. | **Civil No. 14-cv-01318 (JAF)** |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO PRECLUDE DEFENDANTS FROM RELITIGATING AT TRIAL FACTUAL ISSUES PREVIOUSLY FULLY ADJUDICATED**

The OTC Defendants have prevailed in more than 30 lawsuits concerning the applicability of state and local hotel taxes, including 20 cases finding that the OTCs are not persons who own, operate, or manage hotels. (*See* Defendants' Motion for Summary Judgment, Dkt. No. 71, pp. 13-14.) Nevertheless, in "Plaintiff's Motion to Preclude Defendants from Relitigating at Trial Factual Issues Previously Fully Adjudicated" ("Motion" or "Mot."), Plaintiff asks this Court to ignore this great majority of cases and focus only on an incomplete and biased sample of seven prior cases.

Yet, even for these cases, none of them satisfy Puerto Rico's narrow application of collateral estoppel requiring (1) the "most complete perfect identity" between the things, causes and persons of litigants and (2) issues "essential to the prior judgment" to have been actually

litigated and determined by a valid and final judgment. 31 P.R. Laws Ann. Tit. 31, § 3343; *Sterling v. Aerostar Airport Holdings, LLC*, No. 14-1180 (CVR), 2015 U.S. Dist. LEXIS 100632, at *11 (D.P.R. July 31, 2015). Here, the issues decided in Plaintiff's selected cases neither are in perfect identity nor were essential to judgment because, in part, none of them determined whether the Defendants are hoteliers who operate a lodging as provided in 13 P.R. Laws Ann. §2271(8). Instead, six of the seven cases interpret non-operator statutes, including sales, service and furnishing statutes. The only case cited by Plaintiff involving an actual operator statute like that at issue here was decided by the Hawaii Supreme Court. However, that case is not helpful to Plaintiff because the court held that the "OTCs are not operators and the [statute] is not applicable to the OTCs." *Travelocity.com, L.P. v. Director of Taxation, State of Hawaii,* 346 P.3d 157, 196 (Hi. 2015), (Dkt. 149-2). Further, collateral estoppel cannot apply for the additional reason that several of the cases relied upon by Plaintiff do not have final orders binding on all OTC Defendants. More critically, among the 30+ cases decided in favor of the OTCs, Plaintiff ignores the 20 cases that interpreted operator statutes and held the OTCs are not hotel operators.

Some of the factual determinations that Plaintiff wants to ignore from the 30+ favorable cases include:

- "***The OTCs are not hoteliers and do not engage in that business***." *Orbitz, LLC, et al. v. Broward Cnty*., No. 2009-CA-126 (Fla. Cir. Ct. July 13, 2012); *affirmed by* 2014 WL 551767, 2014 (Fla. Dist. Ct. App. 1st Dist. Feb. 12, 2014).

- "They do not purchase the rooms from the hotels, then resell or sublet the rooms to their customers." *Id*.

- "They have no possessory interest in the hotel rooms nor can they grant others that right." *Id*.

- "The OTCs do not, themselves, select which rooms are rented to the customer." *Id*.

- "They do not operate, maintain, or control the physical premises, and they do not set rules or procedures governing the customer's stay." *Id*.

- "The Defendants do not own or operate any physical properties within the City of Fargo." *City of Fargo v. Expedia, Inc.*, No. 09-2013-CV-00620 (Cass Cnty. Cir. Ct. July 9, 2015).

- "They do not perform any of the actual physical functions related to the operation of a hotel within the City of Fargo." *Id*.

- "[A]t no time do the Defendants ever take title to, a possessory interest in, or even a license to occupy, a hotel room within the City of Fargo." *Id*.

- "[T]he Defendants do not purchase a block of rooms from the hotels …." *Id*.

- "[T]he functions of the OTCs under the Merchant Model do not constitute 'operation' of the hotel." *City of Goodlettsville v. Priceline.com, Inc*., 844 F.Supp 2d 897, 912 (M.D. Tenn. 2012).

- "The OTCs do not physically possess or take title to any hotels, hotel rooms, or other hotel-related physical structures within Tennessee…." *Id*.

- "They do not perform any direct oversight of day-to-day hotel operations, such as housekeeping, maintenance of hotel grounds, room service, front desk operations, or building security…." *Id*.

- "They do not physically provide possession of any hotel rooms to consumers…." *Id*.

- "They do not assign the particular room in which a consumer may stay for a given booking." *Id*. at 902.

- "The OTC has no role in the day-to-day operation or management of hotels." *Mayor of Baltimore v. Priceline.com Inc*., 2011 WL 9961251, *4, 2011 U.S. Dist. LEXIS 156906 (D. Md. Aug. 2, 2011).

Of these 30+ cases decided in favor of the OTCs, more than a dozen are final appellate court decisions, including decisions from multiple federal circuit courts and state supreme courts. Plaintiff wants nothing to do with findings from these decisions, instead citing only a few select facts from seven cases it deems favorable. The doctrine of collateral estoppel does not permit Plaintiff to pick and choose among conflicting decisions, or even pick and choose among the findings from one single case. It would be inequitable to ignore favorable holdings and would

defeat the ends of justice.  No basis thus exists for the preclusive effect that Plaintiff now seeks based on its seven cases, and its Motion should be denied.

## ARGUMENT

Federal courts sitting in diversity apply state law when deciding whether collateral estoppel applies to decisions from state courts, like the decisions Plaintiff cites.[1]  *Sterling*, 2015 U.S. Dist. LEXIS 100632 at *11 ("In order to determine the preclusive effect to be given here to a judgment rendered by a state court, the Court must look to Puerto Rico law.").  Puerto Rico's statute governing collateral estoppel is narrow, is not applied whenever doing so would defeat the ends of justice, and requires "***the most perfect identity*** between the things, causes, and persons of the litigants, and their capacity as such."  31 P.R. Laws Ann. Tit. 31, § 3343 (emphasis added).   The Puerto Rico Supreme Court has concluded that only when an issue "***essential to the prior judgment*** is actually litigated and determined by a valid and final judgment, the determination is conclusive in subsequent litigation among the parties."  *Sterling*, 2015 U.S. Dist. LEXIS 100632, at *12.

Collateral estoppel does not apply to the cherry-picked decisions cited by Plaintiff because: (1) no "most perfect identity between the things, causes and persons" exists among the cases; (2) the "issues" Plaintiff seeks to apply here were not "essential to the prior judgment;" and (3) numerous other judgments around the country contain findings that are inconsistent with those Plaintiff seeks to impose here, all of which Plaintiff ignores in its Motion (most of which found in favor of the OTCs).

---

[1] Plaintiff also cites one federal court decision, *City of San Antonio et al. v. Hotels.com, et al.*, o. SA-06-CA-381-OG, 2011 U.S. Dist. LEXIS 72665 (W.D. Tex. July 1, 2011), but that judgment is not final and has not yet been appealed.  Thus, Plaintiff's reliance on *City of San Antonio* flatly contravenes the collateral estoppel doctrine.  *See Cruz v. Melecio*, 204 F.3d 14, 20-21 (1st Cir. 2000) (finding that judgment is "final and unappealable" when all available appeals have been exhausted or the time for taking them has expired.)

Before explaining why collateral estoppel does not apply, as a threshold procedural matter, Plaintiff's Motion is both untimely and 11-pages in excess of the page limit imposed by L.Cv.R. 7(d). If Plaintiff believed that pertinent factual issues presented in this case have been "fully adjudicated," the time to raise them was in advance of the May 15, 2015 dispositive motion deadline. (Dkt. No. 62); *see also Maisonet v. Genett Group, Inc*., 863 F. Supp.2d 138, 142 (D.P.R. 2012) (rejecting a "new substantive argument" when plaintiff "failed to establish this argument during the summary judgment stage of the proceedings."). Instead, in its response to summary judgment, Plaintiff represented to the Court that the case is "replete with disputed facts" (Dkt. No. 87.) Plaintiff's Motion should be stricken on these grounds alone.

## I.  PLAINTIFF FAILS TO DEMONSTRATE "IDENTITY OF PARTIES OR THINGS"

Collateral estoppel applies only where there is "***the most perfect identity*** between the things, causes, and persons of the litigants, and their capacity as such." 31 P.R. Laws Ann. Tit. 31, § 3343 (emphasis added)[2]. The Puerto Rico Supreme Court held there is an identity of things only "if when deciding on the object of a complaint, the judge may contradict a prior decision affirming a right arisen or arising from, or a right affirmed by a prior court decision." *Giles Toro v. University of Puerto Rico*, 183 F. Supp. 2d 457, 464 (D.P.R. 2001); *see also Vazquez Lozano v. Corona*, 249 F. Supp. 2d 144, 146 (D.P.R. 2003) (applying collateral estoppel because "[i]nasmuch as both actions arose from the same nucleus of operative facts a liability determination in the case at bar could directly contradict the findings of the local court.").

Here, there is no perfect identity. First, there is not complete identity among the parties. There are four main Defendant groups in this case: the Expedia Defendants, the Priceline

---

[2] Although the statute specifically addresses res judicata, courts have consistently interpreted it as also applying to collateral estoppel. *Sterling* 2015 U.S. Dist. LEXIS 100632 at *12; *Ramirez Zayas v. Puerto Rico,* 400 F. Supp.2d 410, 413-414 (D.P.R. 2005).

Defendants, the Travelocity Defendants, and the Orbitz Defendants. What Plaintiff fails to mention is that not all of those Defendants, or even Defendant groups, were parties to the cases relied upon by Plaintiff. For example, none of the Priceline Defendants or Travelocity Defendants were parties to the "Georgia Decision I" or "Georgia Decision II" cases cited by Plaintiff. Thus, collateral estoppel could not apply to them. *See, e.g., Taber Partners I v. Ins. Co. of N. Am.*, 875 F. Supp. 88, 94 (D.P.R. 1995) (finding no perfect identity of parties, even in a suit involving the same principal parties, where one suit involved third party and other suit did not). Similarly, none of the Priceline Defendants, Orbitz Defendants, or Travelocity Defendants were parties to the "South Carolina Decision." *Travelscape, LLC v. South Carolina Dep't of Revenue*, 705 S.E.2d 28, 34 (S.C. 2011). Likewise, then, none of those "findings" could be used against those defendants either.

Further, Plaintiff has not proven there is perfect identity between the "things" in this action and other actions that Plaintiff seeks to apply here. Plaintiff's seven cases involved different transactions and different tax statutes with different operative terms. Here, in this case, one of the primary issues is whether the OTCs are hoteliers who operate a lodging. 13 P.R. Laws Ann. §2271(8). In contrast, none of Plaintiff's seven selected cases involved this issue; and six of the seven cases did not include an analysis of an operator statute. Compare *Travelocity.com, L.P. v Wyo. Dep't of Revenue* 329 P.3d 131, 140 (WY 2014)(vendors engaged in the business of selling services); *Expedia, Inc. v. District of Columbia*, 2015 D.C. App. LEXIS 288, Nos. 14-308, 14-CV-309 (D.C. App. Jul. 23, 2015) (vendors selling certain selected services); *Mont. Dep't of Revenue v. Priceline.com, Inc.*, 2015 MT 241 (Mont. 2015) (person who makes sales of services); *South Carolina Dep't of Revenue*, 705 S.E.2d at 34 (persons engaging in the business of furnishing rooms and holding that OTCs are not furnishing rooms);

*City of Columbus*, 681 S.E. 2d at 127 (collecting taxes in fact, not by virtue of any statute); *Hotels.com, L. P. v. City of Columbus*, 686 S.E.2d 91 (Ga. 2009) (same case as above).  The only case addressing an operator statute was Hawaii, but the Hawaii Supreme Court held *that the OTCs were not operators.*  346 P.3d at 196 (holding that the "OTCs are not operators and the [statute] is not applicable to the OTCs.").

Defendants concede that their business models generally operate the same nationwide, but that concession is not enough to create a perfect identity of things.  There is a reason that in the vast majority of cases, courts apply collateral estoppel only as to a discrete, identical issues already decided — not as to cherry-picked facts from unrelated lawsuits.  *See, e.g.*, *Sanchez-Laureano v. Puerto Rico*, No. 07-1172 (JAG/MEL), 2008 U.S. Dist. LEXIS 13944, at *29 (D.P.R. Feb. 25, 2008) (applying collateral estoppel where "[t]he issues of whether the Corrections Administration properly revoked plaintiff's benefit of participating in the ESP and whether said revocation amounted to a retroactive application of Law 49 in violation of the plaintiff's constitutional protection against ex post facto laws was actually and fully litigated . . . ."); *Sanchez-Nunez v. P.R. Elec. Power Auth.*, 509 F. Supp. 2d 137, 150-51 (D.P.R. 2007) (applying collateral estoppel where the Commonwealth Courts already concluded that plaintiff did not have a proprietary interest over his former government position); *Ramirez Zayas v. Puerto Rico*, 400 F. Supp.2d 410, 413-414 (D.P.R. 2005) (applying collateral estoppel to the issue of defendant having been convicted of aggravated assault).

This narrow treatment by courts makes sense when considering the policies underlying the collateral estoppel doctrine, neither of which favors Plaintiff's position.  Collateral estoppel is intended to: (1) "prevent the waste of judicial and party resources through vexatious and

multiple lawsuits" and (2) "encourage the rendering of consistent, reliable adjudications." *Esteves v. Ortiz Alvarez,* 678 F. Supp. 963, 965 (D.P.R. 1988).

As to the first policy consideration, there is no "vexatious" litigation to deter here. Nor can Plaintiff claim it is now concerned about wasting judicial or party resources. Plaintiff spent the past few weeks refusing to stipulate to even <u>one</u> of the 38 facts that the OTCs proposed for the parties' Joint Pretrial Order. Many of the proposed facts rejected by Plaintiff mirror the "factual findings" included in the seven cases that Plaintiff now cites, yet Plaintiff was not receptive in the least to agreeing to anything proposed by OTCs:

| **PROPOSED STIPULATIONS REJECTED BY PLAINTIFF** | **"FACTUAL FINDING" FROM CASES CITED BY PLAINTIFF** |
|---|---|
| "OTCs do not own brick-and-mortar lodging establishments." "The OTCs are not owners of lodging." | "[The OTCs] do not own or control any hotels in this state." *Wyo. Dep't of Revenue* 329 P.3d at 136, (Dkt. 149-1 at 6.) "The OTCs do not own any hotels." *State of Hawaii,* 346 P.3d 157 at 163, (Dkt. 149-2 at 8.) |
| "The OTCs are not lessees of lodging." "The OTCs are not mortgagors of lodging." "The OTCs are not sublessees of lodging." | "[N]or do the OTCs act as lessee, sublessee, mortagee in possession, or licensee of any hotel." *State of Hawaii,* 346 P.3d 157 at 189, (Dkt. 149-2 at 32.) |
| "OTCs do not operate the day-to-day functions of brick-and-mortar lodging establishments." | "[The OTCs] do not possess, run, control, manage, or direct the functioning of a hotel." *Mont. Dep't of Revenue*, 2015 MT 241 at ¶ 10, (Dkt. 149-5 at 8.) |

| | |
|---|---|
| "Hotel operators use third-party distribution channels when they want to, and can increase or decrease their room rates, or availability, on a reservation-by-reservation basis in order to fill rooms that might otherwise go empty and maximize revenue." | "Hotels typically employ revenue managers who set and adjust room rates and select the distribution channels necessary to secure reservations. If they anticipate a need to use intermediaries like the OTCs to fill rooms, they enter into agreements to allow them to market reservations for a certain number of rooms at a certain rate. The hotel controls the price and availability of rooms." *Wyo. Dep't of Revenue* 329 P.3d at 136, (Dkt. 149-1 at 7.) |
| "Hotels can increase or decrease room rates on a daily or even hourly basis, and may open or close distribution channels as needed to fill rooms." | "Hotels can increase or decrease the number of reservations available to the OTCs or close them out entirely." *Wyo. Dep't of Revenue* 329 P.3d at 136, (Dkt. 149-1 at 6.) |

Plaintiff's seven proposed "findings" also do not take a single evidentiary topic off the table—for example, even if the parties were to stipulate that "the merchant model is more profitable than other models for the OTCs," the parties still need to enter evidence pertaining to the operation of the merchant model. All the same witnesses will need to testify at trial, and all the same evidence will need to be entered, for the parties to put on their cases at trial.

As to the second policy consideration, courts across the country have already made myriad findings *inconsistent with* the seven "findings" proposed by Plaintiff. There can be no risk of this tribunal contradicting a right affirmed by a prior judgment because each prior judgment cited by Plaintiff involved different statutes. The situation here is markedly distinct from that in *Ramirez Zayas*, for example, in which there could have been a risk that one court found a party committed aggravated assault, and another court found that he did not. *See Ramirez-Zayas,* 400 F. Supp. 2d at 414. Here, each of the prior judgments *already contain* inconsistencies due to different taxing authorities and different constructions from court.

There is, in short, no "perfect identity of parties or things" as required by the statute. Moreover, none of the collateral estoppel policy objectives would be advanced by applying the doctrine here.

## II. PLAINTIFF'S CHERRY-PICKED FACTS WERE NOT ESSENTIAL TO THE PRIOR COURTS' JUDGMENTS

For collateral estoppel to apply, the issue previously litigated must have been "essential to the prior judgment." *Sterling*, 2015 U.S. Dist. LEXIS 100632, at *11. Federal courts construing Puerto Rico law have not elaborated on what exactly "essential" means. However, in considering the identical requirement under the federal collateral estoppel doctrine, the District Court of Puerto Rico has defined essential as "whether the issue was actually recognized by the parties as important." *Maldonado v. Damas Found.*, No. 12-1042 (JAG), 2014 U.S. Dist. LEXIS 50655, at *11 (D.P.R. Mar. 31, 2014) (quoting Restatement (Second) of Judgments § 27, cmt. j (1982)). It is Plaintiff's burden to prove this element, and it has failed to do so. *See Ramirez Zayas* 400 F. Supp 2d at 414.

Plaintiff has not met its burden to establish that the "findings" it wishes to avoid proving at trial were essential to the prior judgments; instead, Plaintiff merely asserts, with no support, that the findings were "essential." (*e.g.* Mot. at 10, 14.) This is demonstrably false. Almost every proposed "issue" is merely one fact stated by the court amongst a laundry list of other facts that provide background to the case. For example, Plaintiff cites the Hawaii Supreme Court's decision in support of establishing every proposed "issue" except #2. (Mot. at 10-23.) Each of those "issues" are simply mentioned amongst dozens of other facts contained in a section entitled "Background," the stated purpose of which was to "provide the factual background common to both appeals," and none of which the court identified as "essential" to its judgment. *State of Hawaii,* 346 P.3d 157 at 162, (Dkt. 149-2 at 9.) Similarly, Plaintiff relies heavily on the

Wyoming Supreme Court's decision in support of establishing every "issue" except #4.  There, again, Plaintiff has simply plucked facts from three pages of general factual background.[3]  *Wyo. Dep't of Revenue* 329 P.3d at 136-137, (Dkt. 149-1 at 7-8.).  Plaintiff was not able to show these were key issues essential to judgment in the prior actions, because they were not.  Plaintiff's attempt to curate factual findings to apply against the OTCs in this action while turning a blind eye to all the others should not be allowed.

### III. COLLATERAL ESTOPPEL DOES NOT APPLY BECAUSE THE VAST MAJORITY OF COURTS AROUND THE COUNTRY HAVE REJECTED THE "FACTS" PLAINTIFF SEEKS TO PRECLUDE THE OTCS FROM RELITIGATING

Plaintiff asks the Court to allow Plaintiff to unilaterally select the handful of cases from which to draw its "fact findings" and to choose only a few particular findings from those cases that Plaintiff deems beneficial to its argument, while ignoring all the rest that are adverse.  Case law does not support such a self-serving approach to collateral estoppel.  *See Pagan Hernandez v. U.P.R.*, 107 D.P.R. 720, 806-807 (P.R. 1978) (recognizing that preclusion cannot be used to "defeat the ends of justice.").  The United States Supreme Court, in fact, addressed this approach to offensive collateral estoppel in *Parklane v. Hosiery Co. v. Shore*, and cautioned that "a trial judge should not allow the use of offensive collateral estoppel" in situations where "the judgment relied upon as a basis for the estoppel is ***itself inconsistent with one or more previous judgments***

---

[3] It could be argued that in Wyoming, the "fact" that the OTCs "sell" hotel rooms was essential to the judgment.  However, numerous courts have found precisely the opposite — accordingly, that "fact" is not one suited for collateral estoppel.  *E.g. Broward Cnty.*, No. 2009-CA-126; *affirmed by* 2014 WL 551767 (Defendants "do not purchase the rooms from the hotels, then resell or sublet the rooms to their customers."); *Houston v. Hotels.com, L.P.*, No. 2007-13227, 2010 WL 6742975 (District Court of Harris County, Texas Jan. 19, 2010), *affirmed by* 357 S.W.3d 706 (Tex.App.—Houston [14th Dist.] 2011, pet. denied) (an OTC "does not purchase the right to use the room and then resell that right to a consumer.").

*in favor of the defendant*." *Parklane v. Hoisery Co. v. Shore*, 439 U.S. 322, 330-31 (1979) (emphasis added).[4]  The Court then cited the following analysis with approval:

> In Professor Currie's familiar example, a railroad collision injures 50 passengers all of whom bring separate actions against the railroad. After the railroad wins the first 25 suits, a plaintiff wins in suit 26.  Professor Currie argues that offensive use of collateral estoppel should not be applied so as to allow plaintiffs 27 through 50 automatically to re-cover.

*Id.* at 330 n.14; *see also Wiggins v. Rhode Island*, 326 F. Supp. 2d 297, 307 (D.R.I. 2004) ("Where, as here, there are opposing [prior] findings … one favoring Plaintiff and the other favoring the State[,] it would be inequitable to hold that the Officers are bound solely by the finding that harms their defense in this case.").

Because the OTCs have prevailed in the vast majority of lawsuits around the country that address whether they are liable for occupancy tax on the amounts charged for their services, it would be fundamentally unfair and improper to allow Plaintiff to use offensive collateral estoppel based on the few minority decisions.  *See Bear, Stearns & Co., Bear, Stearns Sec. Corp. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 92 (2d Cir. 2005) (affirming decision not to apply offensive collateral estoppel where prior decisions were mixed, stating, "[G]iven the course and outcome of prior cases it would be unfair to rule on the basis of collateral estoppel rather than consideration of the merits."); *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 776 (9th Cir. 2003) (affirming decision not to apply offensive collateral estoppel against State Farm when the prior adverse decision "is contrary to several other well-reasoned holdings in favor of State Farm."); *Abbey Co., LLC v. Lexington Ins. Co.*, 289 F. App'x 161, 163 (9th Cir. 2008) (same);

---

[4] Although some of these cases refer to the federal doctrine of collateral estoppel, not the Puerto Rico doctrine, courts sitting in Puerto Rico have recognized that the two doctrines share similar principles. *See Sistemas Integrados De Salud Del Suroeste, Inc. v. Medical Educ. & Health Servs.*, 474 B.R. 44, 54 (D.P.R. 2012) ("It is well settled law that the doctrines of res judicata and collateral estoppel under both federal and state court jurisprudence preclude relitigation of claims and/or issues which have been or could have been litigated in a prior judicial action for which judgment has been rendered.") (citing *Muñoz Rivera, et al. v. Walgreens Co.*, et al., 428 F.Supp.2d 11, 19 (D.P.R.2006)).)  Thus, the courts' analyses in these cases are instructive here.

*Setter v. A.H. Robins Co., Inc.*, 748 F.2d 1328, 1330-31 (8th Cir. 1984) ("Defendant had won a majority of the litigated judgments on the question of Dalkon Shield liability at the time of the District Court's ruling, and plaintiff has not suggested any special circumstances that should have led the District Court to disregard or otherwise discount those cases in which defendant had prevailed.").

If anything, the 30+ cases that Plaintiff ignores are far more persuasive to this Court's analysis and relevant to the issue to be decided here. Those cases: (1) involve a statute more similar to Puerto Rico's "hotelier" statute (e.g., *Pitt County, North Carolina v. Hotels.com, L.P., et al*., 533 F.3d 308 (4th Cir. 2009) and *City of Columbus, et al.* 693 F.3d 642, both interpreting statutes imposing a tax on "operators"); (2) are more recently decided in many instances (e.g., *City of Fargo v. Expedia, Inc.,* No. 09-2013-CV-00620 (Cass Cnty. Cir. Ct. July 9, 2015); *Wake County, et al. v. Hotels.com, et al*., No. COA13-594 (N.C. Ct. of Appeals Aug. 19, 2014)); and/or (3) involve plaintiff's same contingency fee counsel (*City of Rome, Georgia v. Hotels.com, L.P., et al.*, No. 4:05-CV-249-HLM (N.D. Ga., July 9, 2012); *Mayor of Baltimore*, 2011 WL 9961251 at *4. Plaintiff does not seek to apply the findings from those cases here simply because Plaintiff finds them unfavorable to its position.

Moreover, even in the seven cases hand-picked by Plaintiff, there were numerous factual determinations favorable to the OTC that go *unmentioned* in Plaintiff's Motion. Many of those factual determinations are directly relevant to whether Defendants are "hoteliers" under the Puerto Rico Room Tax (13 P.R. Laws Ann. § 2271 et seq.), which defines "hotelier" as the person "that operates a lodging in Puerto Rico," and "lodging" as the "furnished building commonly used and maintained open for the lodging of guests." Among these factual determinations are:

- "[The OTCs] do not own or control any hotels in this state." *Wyo. Dep't of Revenue* 329 P.3d at 136, (Dkt. 149-1 at 7.)

- "The OTCs do not own any hotels." *State of Hawaii,* 346 P.3d 157 at 189, (Dkt. 149-2 at 9.)

- "The OTCs do not fit within the dictionary definition of 'owners' or 'operators' [of hotels]. *They do not possess, run, control, manage, or direct the functioning of a hotel.*"[5] *Mont. Dep't of Revenue*, 2015 MT 241 at ¶ 10, (Dkt. 149-5 at 5.)

- "The OTCs *serve as intermediaries* between customers and a host of travel service providers, including car rental companies, airlines, and – importantly for this appeal – hotels." *District of Columbia*, 2015 D.C. App. LEXIS 288 at *5, (Dkt. 149-7, at 7.)

- "In a typical merchant model transaction, a customer uses an OTC's website to search for and select a hotel room. The customer enters her payment information directly into the OTC's website, the OTC forwards the reservation request to the hotel, *and the hotel determines whether to accept the request based on factors like availability*." *District of Columbia*, 2015 D.C. App. LEXIS 288 at *5, (Dkt. 149-7, at 6.)

- "The OTC must communicate with the hotel before confirming *because the hotel retains the ability to change room rates and availability*, even seconds after such information is displayed to a customer on an OTC website." *District of Columbia*, 2015 D.C. App. LEXIS 288 at *5, (Dkt. 149-7 at 7.)

- "If the hotel accepts the booking, <u>*it sends a confirmation number*</u> to the OTC, which then charges the customer's credit card and forwards that confirmation number to the customer." *District of Columbia*, 2015 D.C. App. LEXIS 288 at *5, (Dkt. 149-7 at 7.)

- "Hotels typically employ revenue managers who set and adjust room rates and select the distribution channels necessary to secure reservations. If they anticipate a need to use intermediaries like the OTCs to fill rooms, they enter into agreements to allow them to market reservations for a certain number of rooms at a certain rate. *The hotel controls the price and availability of rooms*." *Wyo. Dep't of Revenue* 329 P.3d at 136, (Dkt. 149-1 at 7.)

---

[5] Unless otherwise indicated, all emphasis to quoted material has been added and internal citations have been removed.

- 14 -

- "Hotels can increase or decrease the number of reservations available to the OTCs or close them out entirely." *Wyo. Dep't of Revenue* 329 P.3d at 138, (Dkt. 149-1 at 8.)

- "The OTCs do not participate in the day-to-day bookkeeping of a [hotel] facility, make management decisions, or decide how a facility will spend its revenue. In short, they are not responsible for the financial affairs of a facility." *Mont. Dep't of Revenue*, 2015 MT 241 at ¶ 9 (Dkt. 149-5 at 8.)

- "The OTC has no voice in the room assignment." *Wyo. Dep't of Revenue* 329 P.3d at 137, (Dkt. 149-1 at 7.)

- "The OTCs collect tax on the wholesale rate and pass the collected on to the hotel or rental agency, *which in turn remits it to the Department*." *Mont. Dep't of Revenue*, 2015 MT 241 at ¶ 3, (Dkt. 149-5 at 5.)

- "Currently, the OTCs do not directly remit taxes to the Department, *and they do not collect tax on OTC fees*." *Mont. Dep't of Revenue*, 2015 MT 241 at ¶ 3, (Dkt. 149-5 at 5.)

- "The tax recovery charge – which represents the sales tax due on the net room rate received by the hotel – is also forwarded to the hotel, which then remits it to the District." *District of Columbia*, 2015 D.C. App. LEXIS 288 at *5, (Dkt. 149-7 at 7.)

Even the cases cited by Plaintiff demonstrate that the OTCs should not be liable under the Room Tax. If Plaintiff wants to adopt factual findings from other cases, it should not be permitted to select from only the minority of cases around the country, and from only the few findings it deems helpful in those minority decisions.

## IV.   CONCLUSION

Plaintiff's Motion is a transparent effort to avoid presenting its case at trial. The Court should deny Plaintiff's attempt to cut corners with its cherry-picked facts contradicted by the great weight of findings across the county. Moreover, if Plaintiff believed the OTCs were collaterally estopped from litigating these findings, Plaintiff should have filed its Motion long ago. For all the reasons herein, the Court should deny Plaintiff's Motion in its entirety. Respectfully submitted.

WE HEREBY CERTIFY that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification electronically to all counsel of record.

In San Juan, Puerto Rico, the 26th day of August, 2015.

McCONNELL VALDÉS LLC
ATTORNEYS FOR ALL DEFENDANTS
PO Box 364225
San Juan, Puerto Rico 00936-4225
270 Muñoz Rivera Ave.
San Juan, Puerto Rico 00918
Telephone: (787)250-2619/2603
Fax: (787)759-2792/474-9213
www.mcvpr.com

s/Juan A. Marqués Díaz
USDC-PR No. 211803
jam@mcvpr.com

s/ Britt E. Arrieta Rivera
USDC-PR No. 224905
bea@mcvpr.com