UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| PUERTO RICO TOURISM COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>PRICELINE.COM, INCORPORATED, *et al.*,<br><br>    Defendants. | Civil No. 3:14-cv-01318 (JAF) |

**OPINION & ORDER**

I.
Introduction

The Puerto Rico Tourism Company ("the Company") brought this action against the Defendant online travel companies (the "OTCs") to recover unpaid and underpaid taxes pursuant to Puerto Rico's Room Occupancy Rate Tax Act, P.R. Laws Ann. tit. 13, §2271, *et seq.* ("the Act"). Under the Act, hoteliers are required to pay taxes on the room occupancy rate ("Room Tax") collected from guests. P.R. Laws Ann. tit. 13, §2271o. The OTCs moved for summary judgment requesting that this court determine as a matter of law that they are not "hoteliers" within the meaning of the Act, and therefore, not obligated to pay the Room Tax to the Company.

The court has reviewed the briefing, exhibits, and relevant case law and for the following reasons, finds that the OTCs are not entitled to judgment as a matter of law. Accordingly, the OTCs Motion for Summary Judgement (ECF No. 71) is denied.

II.
Standard of Review

Federal Rule of Civil Procedure 56 states, in pertinent part, that a court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000). The court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Atwater v. Chester*, 730 F.3d 58, 63 (1st Cir. 2013) (citations omitted).

### III.
### Statement of Facts

The parties kindly agree on four facts: (1) The OTCs are online travel companies; (2) under the Merchant Model, the OTCs are merchants of record for the transaction; (3) the OTCs have not registered as hoteliers in Puerto Rico; and (4) the OTCs have or have had contracts with hotels that are located in Puerto Rico. The remainder of the facts are in dispute. In applying the summary judgment standard, the court must review the facts and draw all reasonable inferences in favor of the non-moving party. For the purposes of resolving this motion, the court need only consider the facts relevant to the court's

discussion of whether the OTCs are hoteliers under the Act. As such, those disputed facts are laid out within the court's analysis below. As they do not alter the outcome of the court's resolution of the pending motion, no other facts are discussed herein.

Additionally, the OTCs moved for judgment as a matter of law on the Company's remaining eight claims for relief: declaratory judgment (Count I); injunctive relief (Count II); tort action for negligence and fault under Article 1802 of the Puerto Rico Civil Code (Count IV); unjust enrichment under Article 7 of the Puerto Rico Civil Code (Count V); conversion (Count VI); assumpsit for money had and received (Count VII); imposition of a constructive trust (Count VIII); and damages (Count IX). The court also addresses these claims below.

## IV.

## Law & Analysis

### A. The Room Occupancy Rate Tax Act

Under Puerto Rico's Room Occupancy Rate Tax Act:

> The Company shall levy, charge, and collect a general tax of nine percent (9%) over the room occupancy rate. When dealing with lodgings authorized by the Commissioner of Financial Institutions to operate casinos, the tax shall be equal to eleven percent (11%). When dealing with lodgings authorized by the Company to operate as inns, the tax shall be equal to seven percent (7%). Motels shall pay a tax of nine percent (9%) when such rates exceed five (5) dollars daily. In the case of an all-inclusive hotel, as defined in subsection (23) of § 2271 of this title, the tax shall be equal to five percent (5%) of the global and grouped charge that guests are charged. In the case of supplementary short-term lodging, the tax shall be equal to seven percent (7%). In the case of recreational facilities operated by agencies or instrumentalities of the Commonwealth of Puerto Rico, the tax shall be equal to five percent (5%), with the exception of the facilities of the National Parks Company.

P.R. Laws Ann. tit. 13, § 2271o. "Every hotelier shall be obligated to collect, withhold, and remit to the Company the tax established by § 2271o of this title." P.R. Laws Ann. tit. 13, § 2271r(a). The Act defines the "room occupancy rate" as:

> the rate collected or charged by a hotelier for the occupancy of any room of a lodging, valued in terms of money, whether received in cash or otherwise, including, without limitation, all the income in cash, manager's check or credit. The definition of 'room occupancy rate' shall include, without limitation, the money received by the lodging on account of paid but unused rooms, room penalties and any other charge, rate or additional tax ('fees,' 'resort fees' and/or 'taxes') that a hotelier charges for a stay in a lodging.

P.R. Laws Ann. tit. 13, § 2271(8). The hotelier is obligated to pay the room tax on rooms that are paid for even when an occupant fails to claim his reservation to occupy the room. See P.R. Laws Ann. tit. 13, § 2271(9).

B. Are the OTCs "hoteliers" under the Act?

The first issue this court must address is whether the OTCs are considered "hoteliers" under the Room Occupancy Rate Tax Act. The Act defines "hotelier" as: "any natural or juridical person that operates a lodging in Puerto Rico including, without limitation, the owner, agent, proprietor, operator, lessee, mortgagor sublessee or the holder of the same. For purposes of this chapter, the term agent shall include those individuals including, without limitation, real estate brokers that collect the rent on account of a supplementary short-term lodging for the lodging of guests." P.R. Laws Ann. tit. 13, § 2271(21). The term "lodging" under the Act refers to:

> every furnished building, commonly used and maintained open for the lodging of guests by means of payment of a rental rate, which derives its revenues from the rental of rooms, and that within its offerings provides rental rates computed daily, weekly, fractionally or by a global rent on

> account of an all-inclusive concept. The term 'lodging' shall also include hotels, condohotels, all-inclusive hotels, motels, inns, short-term rentals, hostelries, guesthouses, apartment hotels and recreational facilities operated by the agencies or instrumentalities of the Commonwealth of Puerto Rico.

P.R. Laws Ann. tit. 13, § 2271(22).

The OTCs claim that they are not "hoteliers" under the Act because (1) they do not "operate" any lodging in Puerto Rico; and (2) they are not "agents" within the meaning of P.R. Laws Ann. tit. 13, § 2271(21).

There is no dispute that the OTCs utilize a "merchant business model" to offer hotel rooms to consumers. There is a dispute, however, as to what exactly the use of a "merchant model" means. A lodging has a specific number of rooms to let. Many lodgings have entered into agreements with the OTCs for the OTCs to assist in the reservations for the lodging's rooms. According to the Company's evidence, under the merchant model the OTCs operate businesses that market and sell the lodging's rooms in Puerto Rico, completely control the financial aspects of the transactions, and collect from consumers the retail rate of the room plus occupancy taxes based on the retail rate paid by the consumer. Although the agreements between the OTCs and the lodgings set the wholesale rate that the lodgings agree to accept from the OTCs, the OTCs completely control the rate marketed to consumers and charged for the reservations. This means that, for example, a room that a particular lodging would directly rent at a rate of $359 per night may be rented out through an OTC also for $359, but under the agreement, only the agreed upon wholesale rate, say $200, would actually be paid by the OTC to the lodging. The remaining $159 is profit for the OTC. Essentially, the OTCs have complete

control to rent the rooms at any price above the contracted wholesale rate (or below if they want to lose money), and the more they charge, the more money the OTC makes off the rental.

Where it gets tricky is whether taxes are owed to the Company on the $359 room rate that the customer paid to the OTC, or the $200 that the OTC paid to the lodging pursuant to their agreement. The OTCs argue that they, in fact, are not required to pay any taxes since the Act does not apply to them, but that they merely collect the tax on behalf of the lodgings who are obligated to remit the taxes. The Company argues that by selling rooms over the internet and facilitating all financial aspects of the reservations, the OTCs are acting as "hoteliers" under the Act and that taxes are due on the retail rate paid by the customers to the OTCs.

1. Operate

The Act itself does not define what it means to "operate" a lodging in Puerto Rico. It is a well-settled principle of statutory construction that "when a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." *Smith v. United States*, 508. U.S. 223, 228 (1993). Courts may refer to the dictionary definition to determine a word's ordinary meaning. *Id*. at 228-29. The Oxford English Dictionary defines "operate" as "[t]o manage, to direct the operation of (a business, enterprise, etc.); to carry out or through, apply (a principle, a tradition, etc.)." (OED Third Edition, June 2004) "operate" definition no. 8. Merriam-Webster defines "operate" as "to have control of (something, such as a business, department, program, etc.)[.]"

The parties each provide their own definitions for this court to apply to the term "operate". We need not go further than the above definitions. The question then, at the risk of over-simplification, is whether the OTCs have control over furnished building(s) used and maintained open for the lodging of guests who pay a room rental rate that is computed daily, weekly, fractionally or by a global rent on account of an all-inclusive concept.

Under the facts presented by the Company, in merchant model transactions, the OTCs serve as the "merchant of record." Bookings made through the OTCs may only be cancelled or altered by the customer contacting the OTC, and not through the lodging. Until the time of check in at the lodging, the customer deals solely with the OTC with all aspects of their reservation. The OTCs market the lodgings to customers, run "sales" on room rates, and have complete control over the rates they charge their customers. When a customer books a room through an OTC, the lodging does not have the ability to decline the reservation. Customers pre-pay their reservations through the OTCs and these customers are guaranteed room availability upon arrival as requested in the reservations. The lodgings have no input in the reservation process with the OTCs beyond their agreed wholesale rate until the time the customer arrives to check-in to receive their room key.

Additionally, the facts demonstrated by the Company show that the OTCs have a certain level of control over the operations of the lodgings under their contracts. The OTCs handle customer complaints about the lodgings and have policies with the lodgings regarding handling of the complaints. Under the agreements, lodgings may hire certain

account representatives only after those individuals have met the approval of the OTCs. The OTCs require the lodgings to maintain specified health and safety standards.

The parties, however, heatedly dispute the facts which shed light on the level of control the OTCs have over the lodgings. In the face of the evidence submitted by the Company, the OTCs claim they act solely as go-betweens between customers and hotels and have no control of any kind. Taking the facts in the light most favorable to the Company, a reasonable jury could determine that the OTCs exercise a level of control over the lodgings that is sufficient to warrant a finding that they hoteliers under the Act. Given that genuine issues of material fact surrounding the level of control that the OTCs have over the lodgings, only a jury will be able to make a final determination of that issue.

2. Agents under the Act.

There also exists an argument, a perhaps even a stronger one, that the OTCs are agents. However, having found at least one material issue of fact, the Court need not fully analyze that issue. The Act's definition of "hotelier" includes "any natural or juridical person that operates a lodging in Puerto Rico including, without limitation, the owner, agent, proprietor, operator, lessee, mortgagor sublessee or the holder of the same." P.R. Laws Ann. tit. 13, §2271(21). The OTCs argue vehemently that to qualify as an "agent" under the Act, they must also "operate" the lodging in Puerto Rico. This reading of the statute is nonsensical. The definition clearly gives examples of hoteliers as those persons with certain relationships *with the lodgings*: the owner of the lodging, the agent of the lodging, the proprietor of the lodging, the operator of the lodging, the lessee of the

lodging, the mortgagor sublessee or holder of the lodging. Accordingly, the court rejects the OTCs argument that the Act requires each of the included persons to operate the lodging – especially since the non-exhaustive list specifically mentions operators of lodgings as hoteliers in addition to owners, agents, proprietors, etc.

The Puerto Rico Supreme Court decision in *BBC Realty, Inc. v. Flores Galarza*, 166 D.P.R. 498 (PR 2005) (Certified English translation at ECF No. 75-1), does not alter this court's finding that the OTCs, while not engaged in all day-to-day operations of running a brick-and-mortar lodging, likely qualify as agents under the Act. In fact, *BBC Realty* actually supports this court's finding that the term "agent" likely applies to the OTCs.

In *BBC Realty*, the Supreme Court of Puerto Rico examined an older version of Puerto Rico's statute regarding the tax rate on rented hotel rooms, P.R. Laws Ann. tit. 13, §9051 (Repealed. Act Sept. 9, 2003, No. 272, § 62, eff. 180 days after Sept. 9, 2003.). The statute at issue before the Court defined "hotelier" as "any person that operates a hotel, motel, apartment hotel or guest house in Puerto Rico, including but limited to, the owner or property owner of the same, the lessee, sublessee, mortgagee, holder, apartments, guest houses or motel." *BBC Realty*, 166 D.P.R. at 505 fn. 13 (citing P.R. Laws Ann. tit. 13, §9051(b)(1))  (ECF No. 75-1 at 9). Interpreting the statute strictly against the government, the Court found that BBC Realty, a real estate broker acting as an intermediary for customers to rent out rooms or apartments from owners, was not contemplated as a person obligated to pay the room tax under the statute. *Id.* at 510 (ECF No. 75-1 at 19-20). The Court found that the statute, at that time, contemplated the tax

payer to have a certain type of control over the building or structure of the hotel. *Id.* at 507 (ECF No. 75-1 at 13-14).

Puerto Rico's room tax statute was amended in 2003 (but not in effect at the time of the controversy in *BBC Realty*) to include real estate brokers in the definition of "hoteliers" *even though real estate brokers act as intermediaries to facilitate the rental but do not operate brick and mortar buildings*. The Act now defines "hoteliers" as:

> any natural or juridical person that operates a lodging in Puerto Rico including, without limitation, the owner, agent, proprietor, operator, lessee, mortgagor sublessee or the holder of the same. For purposes of this chapter, the term agent shall include those individuals including, without limitation, real estate brokers that collect the rent on account of a supplementary short-term lodging for the lodging of guests.

P.R. Laws Ann. tit. 13, §2271(21). There is no ambiguity as to who is obligated to pay the room tax. What must be determined is whether the OTCs were, in fact, agents of the lodgings. By selling hotel rooms in Puerto Rico, controlling the financial aspects of the transactions, and collecting from consumers the retail rate of the room and occupancy taxes based on the retail rate, the OTCs step into the shoes of lodging operators and perform key business functions—such as the collection of payments and taxes—on their behalf. By engaging in these functions, the OTCs either operate lodgings in Puerto Rico or act as agents of the lodgings. Either way, the OTCs are obligated to remit the room tax under the Act.

Under the facts evidenced by the Company, a reasonable jury could find that the OTCs are "hoteliers" under the Act. Although the statute is clear that an agent of the operator of a lodging is obligated to remit the Room Tax, a genuine issue of material fact

exists as to whether the OTCs here are truly agents of the operators. Accordingly, the motion for summary judgment is denied and this matter must proceed to a jury to make a final determination of that issue.

### 3.  Room Occupancy Rate

Should the jury determine that the OTCs are hoteliers – either as operators or agents of lodgings, and are thereby required to remit the room tax under the Act, we need to determine what the "room occupancy rate" entails. The Act defines "room occupancy rate" as:

> the rate collected or charged by a hotelier for the occupancy of any room of a lodging, valued in terms of money, whether received in cash or otherwise, including, without limitation, all the income in cash, manager's check or credit. The definition of 'room occupancy rate' shall include, without limitation, the money received by the lodging on account of paid but unused rooms, room penalties and any other charge, rate or additional tax ("fees," "resort fees" and/or "taxes") that a hotelier charges for a stay in a lodging.

P.R. Laws Ann. tit. 13, §2271(8). Clearly the only reasonably interpretation is that the "room occupancy rate" applies to the entire room rate collected by the OTCs - including the service fees. Thus, should the jury determine that the OTCs are hoteliers, the OTCs are obligated to pay room tax on the rate collected from their consumers. Going back to the example above, the applicable room tax would be 9% of the nightly room rate of $359 charged to the consumer, or $32.31 in taxes per night. We note that the OTCs will still operate on a profit – they would still collect their "fees" in the difference between the rate the customer pays and the wholesale rate agreed upon with the lodging.

Additionally, the OTCs will be responsible for room tax on the paid for reservations where there customers, for whatever reason, cancel or fail to show up to check in. Currently, when a customer fails to show up for a prepaid reservation, the OTCs keep the prepaid amounts – including the room rate, taxes and fees. Because the OTCs do not forward any payments to lodgings on these "no shows", the Company does not receive any taxes. The Act, however, requires hoteliers to remit payment of taxes for rates for paid but unused rooms. "Rate for paid but unused room" is defined as "the rate that shall be charged by a hotelier when an occupant does not appear to claim his reservation to occupy the room." P.R. Laws Ann. tit. 13, §2271(9). This rate includes whatever amount of the prepaid rate that is retained by the hotelier and not reimbursed to the customer – whether it is the full nightly rate, or a $25 cancellation fee. Accordingly, if the jury determines that the OTCs are hoteliers under the meaning of the Act, they owe the Company taxes from these "no show" transactions.

C. The Company's remaining claims.

The Company also asserts claims against the OTCs for declaratory judgment (Count I); injunctive relief (Count II); tort action for negligence and fault under Article 1802 of the Puerto Rico Civil Code (Count IV); unjust enrichment under Article 7 of the Puerto Rico Civil Code (Count V); conversion (Count VI); assumpsit for money had and received (Count VII); imposition of a constructive trust (Count VIII); and damages (Count IX). The OTCs claim that the Company's remaining claims fail because they: (1) are dependent on the Room Tax; (2) are not actionable in Puerto Rico; (3) are premised

upon the Company's theory that the OTCs collect taxes on the "retail rate;" and/or (4) fail to establish all elements of each claim.

To begin, the court notes that many of the OTCs arguments for dismissing the Company's remaining claims are premised on this court determining that the OTCs are not "hoteliers" as a matter of law. Because we have denied the OTCs motion for summary judgment as to this issue, any argument based on that premise must fail at this juncture.

Each of the Company's remaining claims is actionable in Puerto Rico: injunctive relief is an available remedy under P.R. Laws Ann. tit. 32, § 3521 *et seq.*; conversion and assumpsit are recognized in P.R. Laws Ann. tit. 31, § 5121; constructive trust, under the right circumstances, is authorized under P.R. Laws Ann. tit. 31, §7; and P.R. Laws Ann. tit. 32, § 3431 provides for the recovery of damages in a civil action.

The OTCs argue that the Company's claims for declaratory judgment, injunctive relief, constructive trust, and damages are actually remedies and should be dismissed as separate causes of action. The court agrees that these claims are technically subject to dismissal to the extent that they are claims. However, that does not limit the availability of them as remedies and there is no legal significance to dismissing them as claims. Accordingly, we will not at this time dismiss these remedies styled as separate counts.

The OTCs move to dismiss the Company's claim for unjust enrichment (Count V) for lack of establishing a relationship between the Company's "impoverishment" and the OTCs' "enrichment". However, when viewing the facts in the light most favorable to the Company, the facts demonstrate that the OTCs collected sums for payment of taxes on

room rates but either underpaid or failed to pay – as in the case of no shows – the taxes to the Company. Accordingly, the court rejects this argument.

The remainder of the OTCs arguments for the dismissal of the Company's claims for negligence, conversion, and assumpsit are premised on this court finding that the Room Tax does not apply to the OTCs. Since the court finds that the Act may apply to the OTCs as "hoteliers", these arguments fail.

## V.
## Conclusion

For the foregoing reasons, the OTCs' Motion for Summary Judgment (ECF No. 71) is DENIED.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 31st day of August, 2015.

S/José Antonio Fusté  
JOSE ANTONIO FUSTE  
U. S. DISTRICT JUDGE